IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Brandon Kellum,<br><br>    Plaintiff,<br><br>v.<br><br>Jennifer Meaker et al,<br><br>    Defendants. | CASE NO.  1:23-cv-01198-MMM |

**DEFENDANT GRACE WATSON, RN'S
<u>MOTION FOR A FINDING OF GOOD FAITH SETTLEMENT</u>**

Defendant Watson now Moves this Court for an Order finding that the settlement between Defendant Watson and Plaintiff Brandon Kellum was made in good faith. In support, Defendant states:

1.   Plaintiff Brandon Kellum, and Defendant, Grace Watson, RN, have reached a settlement, and a settlement agreement has been executed by Plaintiff Kellum and Defendant Watson (the "Settling Parties"). This bona fide, arms-length settlement agreement was reached after multiple settlement negotiation telephone calls between the Settling Parties. *See* <u>Exhibit A</u>, Settlement Agreement (dated August 24, 2025). The settlement check in the amount of $1,152.00 was received by Plaintiff and he notified undersigned counsel on October 20, 2025 of his receipt. Defendant now moves for a good faith finding.

2.   By way of brief background, this Court's 9/7/23 Merit Review Order permitted plaintiff to proceed with federal claims under 42 U.S.C. § 1983 for alleged deliberate indifference to his serious medical needs (delay in receiving his anxiety and psychotropic medications on

occasion between September 2021 and October 2022). *See generally* ECF No. 7. Plaintiff also alleged that he filed regular grievances on this issue and it was not adequately addressed, and that there were meetings between Wexford and IDOC Healthcare Administrators. *Id.* at p. 2. The Court permitted plaintiff to proceed against IDOC Direct Rob Jeffreys, Illinois River Healthcare Administration Meaker, Wexford, Warden Cherryle Hinthorne, Warden T. Clarke, Wexford Regional Director Ryan Carlson, Nurse Tonya English, and "Jane Doe" nurses.

3.     Defendant Watson was an independent contractor nurse during a portion of the time alleged in the complaint and assigned during certain times at Illinois River and was later identified during the course of discovery.

4.     The Settling Parties now seek from this Court a finding that the settlement was made in good faith under both federal and state law. This Court has the authority to make such a finding under federal common law, where issues such as setoff and contribution may be affected. *See, e.g., Fox ex rel. Fox v. Barnes*, 2013 WL 2111816, at *3-4, *7-8 (N.D. Ill. May 15, 2013); *Awalt v. Marketti, et al.*, Case No. 11-cv-5142, ECF No. 471 (N.D. Ill. July 28, 2015); *Siwula v. Lake County, Illinois, et al.*, No. 12-cv-2096 (N.D. Ill. Feb. 2, 2014).

5.     Further, this Court may consider Illinois common law in determining good faith; and should consider the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.1, *et seq*. (the "Contribution Act"), which provides for a finding of good faith settlement and release to settle issues of setoff and contribution. *Fox*, 2013 WL 2111816 at **4, 9. When a plaintiff sues more than one defendant for injury in tort, the Contribution Act releases the settling defendant from liability for contribution to the remaining defendants if the settlement was made in good faith. 740 ILCS 100/2(c)–(d); *Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1416 (7th Cir. 1996) (citing 740 ILCS 100/2(d)). "The 'good faith' of a settlement is the only limitation which the Contribution

Act places on the right to settle, and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor." *Johnson v. United Airlines*, 203 Ill.2d 121, 128, 784 N.E.2d 812 (Ill. 2003) (citations omitted).

6. The Illinois Supreme Court has recognized that "the Contribution Act seeks to promote two important public policies—the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Johnson*, 203 Ill. 2d at 133. "When a trial court is notified that a settlement has been reached and is asked to determine the good faith nature of the settlement, the court should rule on the good faith of the settlement as soon as practicable, apart from and in advance of any trial on the tort issues." *Sachs v. Reef Aquaria Design, Inc.*, 2008 WL 780633 at *3 (N.D. Ill. Mar. 20, 2008) (citing *Johnson*, 784 N.E.2d at 818)

7. The question of whether a settlement is made in good faith "is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Johnson*, 784 N.E. 2d at 821.

8. The settling parties bear the initial burden of making a preliminary showing of good faith; but once that preliminary showing has been made, the challenging party must prove the absence of good faith by a preponderance of the evidence. *See Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 23; *Fox*, 2013 WL 2111816, at *10 (N.D. Ill. May 15, 2013) (citing *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012)).

9. To evaluate whether a settlement was made in good faith, a court may consider the following factors: (1) whether the amount paid by the settling tortfeasor was within a reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settlor; and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement. No

single factor is determinative, and it is necessary for a trial court to conduct separate evidentiary hearings, decide the merits of the tort case, or rule on the relative liabilities of the parties before making a good faith determination. *Sachs*, 2008 WL 780633 at *3 (quoting *Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 449 (Ill. App. Ct. 2000)). "A settlement is not in good faith if it is shown that the settling parties engaged in collusion, fraud, unfair dealing, or wrongful conduct." *Id*. at *4.

10.     In this case, the totality of circumstances shows that the settlement between Plaintiff and the Defendant Watson was made in good faith. To begin with, the Settling Parties entered into a legally valid settlement agreement supported by adequate consideration, after analysis of the strengths and weaknesses of the claims and defenses involving Defendant Watson, the potential damages and costs if the case were to proceed past this point, including Defendant Watson's relatively limited involvement as the independent contractor registered nurse during the period of time alleged in the complaint. The Settling Parties undertook settlement negotiations after Defendant Watson Answer the operative complaint and the Settling Parties exchanged written discovery.

11.     Moreover, there is no personal relationship between the Settling Parties. On the contrary, Plaintiff sued Defendant Watson. Further, the negotiations as mentioned above between the Settling Parties were conducted at arms-length (via telephone) and in good faith through several weeks of telephone calls and time for both sides to consider and arrive at the final number of $1,152, which was only reached after several rounds of offers and counteroffers. The Settling Parties could not reach agreement initially, but continued negotiating, culminating in a signed settlement agreement by Mr. Kellum on August 24, 2025 and receipt of the settlement check with confirmation provided to the undersigned on October 20, 2025. Neither Plaintiff nor Defendant Watson have tried to conceal information about the circumstances surrounding the settlement from

the non-settling Defendants as Defendant Watson has filed the Settlement Agreement on the public docket and is seeking a good faith finding from this Honorable Court.

12.    In sum, the Agreement was made in good faith and reflects a measured understanding and assessment of the costs and risks of proceeding with litigation and the benefits of a settlement. In addition, the amount paid by Defendant Watson in exchange for a release from Plaintiff of all claims against the Defendant is reasonable given the relative alleged culpability of the Defendant, who was an independent contractor working some of the alleged shifts at issue. *See Johnson*, 203 Ill.2d at 133. For all these reasons, the Settling Parties have met their burden of showing that the settlement was made in good faith. *See id*.; *see also Antonicelli,* 2018 IL 121943, ¶ 23 (settling parties' burden "is met with proof of a legally valid settlement agreement.").

## CONCLUSION

For these reasons, Defendant Watson requests that this Court to enter an Order:

1) Finding that the settlement between Plaintiff and Defendant Watson was made in good faith under federal common law and the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.1, *et seq*.

2) Dismiss with prejudice Defendant Watson from this case as the parties have fully and fairly settled this case;

3) And for any further relief the court deems just.

Respectfully submitted,

*/s/Matthew Kaminski*
**HALL PRANGLE LLC**
200 S. Wacker Drive, Suite 3300
Chicago, IL 60661
312-267-6972
mkaminski@hallprangle.com
Attorney for Defendant Grace Watson, RN

5

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically filed the attached ***Motion for a Finding of Good Faith Settlement*** with the Clerk of Court, which will send notification of such filing to all registered CM/ECF participants, and separately via certified U.S. Mail sent to:

Plaintiff Brandon Kellum
6665 State Route IL-146
Vienna, IL 62995

By:    /s/Matthew Kaminski